RECEIVED
USDC CLERK, CHARLESTON, SC

2005 SEP 21  A 9: 57

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Gina Smith, Cathy Poole,      )      C.A. No. 2:04-0172-PMD-RSC
and Harvey Poole,             )
                              )
            Plaintiffs,       )
                              )
        -versus-              )      **REPORT AND RECOMMENDATION**
                              )
The City of North Charleston, )
Robert Knight, and Robin      )
Miller,                       )
                              )
            Defendants.       )

This sexual harassment and retaliation case alleging
violations of Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e et. seq., 42 U.S.C. § 1983, and a state law cause
of action for intentional infliction of emotional distress, is
before the undersigned United States Magistrate Judge for a
report and recommendation on the Defendants City of North
Charleston's and Robin Miller's motions for summary judgment
under Rule 56 of the Federal Rules of Civil Procedure.  28 U.S.C.
§ 636(b).

### PROCEDURAL HISTORY

On January 20, 2004, Plaintiff Gina Smith sued Defendants
City of North Charleston (City) and Robert Knight; Plaintiff
Cathy Poole sued Defendants City and Robin Miller; and Harvey
Poole sued Defendant City.  Plaintiff Gina Smith asserted that
she was subjected to sexual harassment by co-worker Defendant
Robert Knight, that she reported his conduct, and that the City

responded inadequately to the allegations against Knight, all in violation of Title VII and her right to equal protection under the law actionable pursuant to 42 U.S.C. § 1983.

Plaintiff Cathy Poole asserted that she was subjected to sexual harassment by her supervisor, Defendant Robin Miller, that she reported said conduct, and that the City responded inadequately to her allegations against Miller, all in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. Additionally Poole asserted she was retaliated against for reporting Miller's conduct, in violation of both Title VII and her First Amendment rights under § 1983. Poole also brought a state law claim for intentional infliction of emotional distress against Miller.

Plaintiff Harvey Poole asserted that he was retaliated against by the City for encouraging his wife, Cathy Poole, to report Miller's conduct, in violation of Title VII of the Civil Rights Act of 1964 and his First Amendment rights pursuant to 42 U.S.C. § 1983.

Discovery is complete. Defendant Miller filed a motion for summary judgment on April 25, 2005, and Defendant City filed a motion for summary judgment on April 26, 2005. Plaintiffs filed a response in opposition to the City's motion on May 27, 2005, and Plaintiff Cathy Poole filed a response in opposition to Miller's motion on June 1, 2005. Defendant City filed a reply to

Plaintiffs' response on June 6, 2005.  Oral argument was had

before the undersigned on June 15, 2005.  Hence it appears

consideration of the motion is appropriate.

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record

demonstrates that the requirements of Fed. R. Civ. P. 56(c) have

been met.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Summary judgment is mandated where the party opposing the motion

has failed to establish the existence of an element essential to

his case, and on which he bears the burden of proof.  Id., 477

U.S. at 322.

The party seeking summary judgment must inform the court of

the basis for its motion, and identify those portions of the

record that demonstrate the absence of a genuine issue of

material fact.  The moving party, however, need not offer proof

that negates the opponent's claim; rather, as to issues on which

the party opposing the motion has the burden of proof at trial,

the party seeking summary judgment need only point to an absence

of evidence to support the opponent's claim.  The party opposing

summary judgment must then point to facts evidencing a genuine

issue for trial.  Fed. R. Civ. P. 56(c); see also, Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the

plaintiff raises a "metaphysical doubt" as to the material facts.

-3-

Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp.,
475 U.S. 574, 586 (1986).  Likewise, "unsupported speculation is
not sufficient to defeat a summary judgment motion."  Felty v.
Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  If
the plaintiff's evidence does not raise a genuine issue as to a
material fact, then summary judgment is proper for the
defendants.  See, Anderson, 477 U.S. at 249-50 (where evidence is
not significantly probative, then summary judgment is proper).
Furthermore, even as to a material fact, an issue is genuine only
where the record establishes that the fact finder could find, by
a preponderance of the evidence, that the plaintiff is entitled
to judgment in his favor.  Id., 477 U.S. at 252.

## LAW

### SEXUAL HARASSMENT

"Intentional sexual harassment of a public employee...
constitutes gender discrimination in violation of the Equal
Protection Clause of the Fourteenth Amendment and is actionable
under 42 U.S.C. § 1983."  Riley v. Buckner, 1 Fed. Appx. 130, 133
(4th Cir. 2001).  The Fourth Circuit Court of Appeals applies the
standards developed for hostile work environment claims under
Title VII to claims for sexual harassment under § 1983.
Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994).  Therefore
review of Title VII law is appropriate to the § 1983 causes of
action as well.

-4-

Title VII, which was enacted as part of the Civil Rights Act of 1964, provides that it "shall be an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) & (a)(1).

This provision "not only covers 'terms' and 'conditions' in the narrow contractual sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment.'" Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting Meritor Savs. Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Title VII is violated "[w]hen the workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult . . . ." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Supreme Court has held that "not all workplace conduct that may be described as 'harassment' affects a 'term, condition or privilege' of employment withing the meaning of Title VII." Meritor Savings Bank, FSV, v. Vinson, 477 U.S. 57, 67 (1986). Instead, for "sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working

environment." Id.

To establish a claim for sexual harassment by a co-worker, a plaintiff must show: (1) unwelcome conduct; (2) based on Plaintiff's gender; (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis for imputing liability to the employer. See, Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266 (4th Cir. 2001); Wrightson v. Pizza Hut of America, Inc., 99 F.3d 138, 142 (4th Cir. 1996); see also, Swentek v. USAIR, Inc., 830 F.2d 552, 557 (4th Cir. 1987).

To determine whether the working environment was hostile as required to establish the third element of the *prima facie* case, the court must examine a totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). The working conditions must be sufficiently severe and pervasive from both a subjective and objective viewpoint in order to be actionable. Conner v. Shrader-Bridgeport Int'l, Inc., 227 F.3d 179, 192 (4th Cir. 2000).

Further, the Fourth Circuit in Mikkels v. Durham, 183 F.3d 323 (4th Cir. 1999), instructed, "our precedents [have] long

-6-

defined the basis for imposing liability under element (4) as being that after having acquired actual or constructive knowledge of the allegedly harassing conduct, the employer had taken 'no prompt and adequate remedial action to correct it.'" Id. at 329. The court did not approve specific remedial responses but found that significant weight should be given "to the fact that a particular response was demonstrably adequate to cause cessation of the conduct in question." Id. at 330.

Unlike Plaintiff Smith, whose problem was with a co-worker, Plaintiff Cathy Poole's incidents involved a supervisor. The Supreme Court held in Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) that an employer can be vicariously liable for harassment by a supervisor. However, the Court also created a two-part affirmative defense to liability:  (1) The employer must show it exercised reasonable care in preventing and promptly correcting any sexual harassment and (2) the plaintiff employee must have unreasonably failed to take advantage of the preventative or corrective opportunities in place. Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 265-66 (4th Cir. 2001)(quoting Faragher and Ellerth).

**RETALIATION**

In order to establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity;

-7-

(2) the employer took an adverse employment action against her, and (3) a causal connection existed between the protected activity and the asserted adverse action. Anderson v. GDC, Inc., 281 F.3d 452, 458 (4th Cir. 2002). Protected activity includes opposition to any practice made an unlawful employment practice under Title VII. See, 42 U.S.C.A. § 2000e-3(a) (West 2001).

Further, "adverse action may include other retaliatory acts or harassment, if, but only if, that act or harassment results in an adverse effect on the 'terms, conditions, or benefits' of employment." Von Guten v. Maryland, 243 F.3d 858, 866 (4th Cir. 2001). Actions such as reassigning an employee to a different position, even with different duties, does not constitute an adverse employment action so long as the employee's grade and pay remain the same.

**FAILURE TO TRAIN**

Plaintiffs Smith and Cathy Poole allege that the City has a policy of ignoring sexual harassment and that the investigators were insufficiently trained, which violates their rights to equal protection and is actionable under 42 U.S.C. § 1983.

A municipality can be subject to suit under 42 U.S.C. § 1983 to the extent that the municipality's policies violate constitutional rights. Monell v. Dept. of Social Servs. of the City of New York, 436 U.S. 658 (1978). Such policies can include practices permanent enough to constitute a "'custom or usage'

-8-

with the force of law." <u>Id.</u> at 690-91. The Supreme court made clear in <u>Canton v. Harris</u>, 489 U.S. 378, 389 (1989) that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." Liability for such requires two elements: (1) that the official in question subjectively recognized a substantial risk of harm; and, (2) that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." <u>Parrish v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004).

## RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

To establish a *prima facie* case of retaliation in violation of rights protected by the First Amendment, Plaintiff must show that (1) she engaged in protected speech on a public concern; (2) her interest in the First Amendment speech outweighs the employer's interest in the efficient operation of the workplace; (3) she was deprived of some valuable benefit; and (4) a causal relationship exists between her protected expression and the loss of benefit. <u>Peters v. Jenney</u>, 327 F.3d 307, 322-23 (4th Cir. 2003).

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Cathy Poole brought a cause of action for intentional infliction of emotional distress or outrage against Miller under South Carolina common law. To state a claim for intentional

infliction of emotional distress or outrage, a plaintiff must show that: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and had to be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of defendant caused Plaintiff's emotional distress; and (4) the emotional distress suffered by plaintiff was so severe that no reasonable person could be expected to endure it. Bergstrom v. Palmetto Health Alliance, 358 S.C. 388, 596 S.E.2d 42 (2004).

### DISCUSSION

The claims of each plaintiff and the facts relevant to that plaintiff, either undisputed, or as presented by the plaintiff as the non-moving parties, and all reasonable inferences therefrom, to the extent supported by the record, are discussed seriatim.

### GINA SMITH

Plaintiff Gina Smith joined the North Charleston Police Department (NCPD) in 1995. In 1997, Smith transferred to the K-9 unit. Smith worked at the NCPD for seven years until her resignation was effective on March 17, 2002.

2:04-cv-00172-PMD    Date Filed 09/21/05    Entry Number 89    Page 11 of 34

During an early assignment, one of Smith's supervisors, Ed Smith[1], made inappropriate sexual comments to her and another female officer. Plaintiff reported the problem to Ed Smith's supervisor, Lt. Lighthead. Lighthead resolved the matter that night, according to the plaintiff. She testified that until her troubles in the instant case, there were no other instances of sexual harassment that she experienced or witnessed.

Smith recommended defendant Robert Knight to the K-9 unit and they trained together in November 2001. They knew each other previously when Knight was on patrol, and they were on friendly terms. However, on December 18, 2001, Smith complained to Sgt. Johnson that Knight had made an inappropriate sexual comment to her while they were in the computer room the previous day. Sgt. Johnson confronted Knight who admitted the comment. Sgt. Johnson told Knight such comments must stop and forwarded his report to Internal Affairs (IA) for a formal investigation. On January 9, 2002, Smith was interviewed by IA investigator Lt. Stephen Whisenant, and she alleged multiple other incidents of inappropriate behavior by Knight. She also told Whisenant that since her complaint, Knight had not approached her or spoken to her.

Knight was moved away from Smith to the day shift and both were told to have no contact during the investigation. The

---

[1] Gina Smith and Ed Smith are not related to each other.

-11-

investigation revealed at least two other incidents in which
Knight made inappropriate comments, but no evidence sufficient to
characterize the conduct as "sexual harassment" was found.
Rather Knight was found to have "behaved inappropriately towards
a co-worker." Knight was given a formal written reprimand and
further discipline disqualified Knight from any promotions for
one year.[2] Knight signed an acknowledgment of his infraction and
discipline, and Smith was informed of the results of the
investigation on February 20, 2002.

Following the investigation, Knight was not moved back to
the shift with Smith, but was moved to another shift that
occasionally overlapped Smith's shift. Thereafter, Smith saw
Knight one time only, and Knight did not speak to Smith or
approach her. In short, Smith agrees that Knight never engaged
in harassment or contacted her at any time after her complaint on
December 18, 2001. Smith signed a statement for IA to that
effect.

Smith submitted a letter of resignation to Sgt. Johnson on
January 29, 2002, but Sgt. Johnson convinced her to withdraw the
letter, since he felt it was written only because Smith was upset
with Knight. Thereafter, on March 1, 2002, Smith submitted a

--------------------------------------------------

[2] Plaintiff claims that, due to Knight's lack of seniority
at the time, he would not have been promoted in any event.

-12-

second letter of resignation because her husband had accepted a job near his family in Kentucky and she was relocating there.

A review of the record and relevant case law indicates that the City is entitled to summary judgment on the § 1983 and Title VII sexual harassment claims brought by Plaintiff Gina Smith. Smith failed to establish a *prima facie* case of sexual harassment because she did not forecast evidence which might form a basis for imputing liability for co-worker harassment to the City. Smith reported Knight's harassment to Sgt. Johnson on December 18, 2001, and Sgt. Johnson ordered Knight to stop the complained of conduct. An IA investigation ensued during which allegations made by Smith were investigated. At the conclusion of the investigation, the department determined that Knight was guilty of improperly treating a fellow officer including the use of abusive or profane language, and he was reprimanded accordingly. Knight ceased any contact with Smith after Smith reported the conduct on December 18, 2001, and Smith gave a signed statement to IA on January 9, 2002, that Knight had not bothered her since her complaint.

In short, it is undisputed that the City, through the department, promptly investigated and disciplined Knight, which ended his inappropriate conduct. Smith simply believes the City's response lacked an appropriate level of severity and that

-13-

the investigation, which failed to substantiate all conduct alleged, was deficient.  Smith is incorrect.

Swentek v. USAIR, Inc., 830 F.2d 552 (4th Cir. 1987) is on point.  Swentek, a flight attendant, filed a complaint of sexual harassment against a co-worker, Ludlum.  Ludlum had allegedly made inappropriate comments, lewd gestures, and unwanted physical contact.  As in the instant case, an investigation was undertaken, and some, but not all, of the allegations were sustained.  Ludlum was given a written reprimand and told to cease using foul language.  When Swentek later sued to impose liability on USAIR for Ludlum's sexual harassment, the Fourth Circuit wrote:

> In taking remedial action, USAIR was obliged to investigate Swentek's charges and to present a reasonable basis for its subsequent actions.  It was not, however, required to credit all of Swentek's allegations in order to escape liability.  In view of the allegations in this case, USAIR's written warning was adequate.

Id. at 558.

Like Swentek, the City punished Knight for the allegations that were sustained, and Smith never complained of any other harassment after the investigation and punishment.  Therefore the City cannot be held liable for the harassment and it is entitled to summary judgment.

Plaintiff Gina Smith also alleged that the Defendant City has a de facto policy of turning a blind eye towards sexual

harassment, and that the officers charged with investigating such claims are insufficiently trained. While in some circumstances, failure to train can support § 1983 liability, Smith has not offered evidence to support her contention.

It is undisputed that both the City and the police department have published policies prohibiting sexual harassment. The police department has policies providing for the investigation and discipline of such actions. The City has mandatory training on sexual harassment provided by outside professional trainers which is provided when an employee is hired and the police department also provides training videos on sexual harassment that are provided regularly to employees.

Plaintiff Smith was able to identify the police department's policy on sexual harassment and deposed that she was aware of it during her employment. She does not deny that she attended the City's training course on sexual harassment, and she agrees that she watched the department's training videos on sexual harassment.

Plaintiff Smith knew that harassment was prohibited and when Knight's conduct merited it, Smith reported it to her supervisor, Sgt. Johnson. Johnson, in turn, put a stop to Knight's conduct and then forwarded the report up the chain of command to IA for an investigation, which resulted in Knight's discipline. Smith disagreed with the severity of that discipline and she claimed

that  the investigation was somehow inadequate.  Her subjective

opinions fall far short of demonstrating with admissible evidence

that constitutional rights were violated.  Her claim should fail.

## CATHY POOLE

Plaintiff Cathy Poole married Plaintiff Harvey Poole in

April 1988, and Cathy Poole joined the NCPD a year later as a

"civilian" employee working in the records area.  She worked in

records for five years, the last two of which she served as a

reserve police officer.  In 1994, Cathy Poole became a sworn

officer with the rank of "Patrol", and in 1997 received an

automatic raise in rank to "Private First Class."

During Cathy Poole's first assignment as an officer, she

worked under Sgt. Tolson.  When Tolson began making unwelcome

sexual comments and advances, Cathy Poole went to then-Chief of

Police Caldwell and reported Tolson's behavior.  Caldwell

transferred Tolson out of Poole's unit within the week, and Poole

had no more contact with Tolson.

Poole was subsequently assigned to several other units over

the years including one at the Navy base, one in the juvenile

division, and one on the Drug Enforcement Agency task force.

Poole testified that she did not experience sexual harassment

during these assignments.  In 2000, Poole was reassigned to a

Patrol unit.  Poole was not exposed to any inappropriate behavior

-16-

in that assignment until defendant Miller became her supervisor in August 2001.

On Poole's first day back to work after a medical leave, Miller asked and Poole agreed to meet each other at a local Waffle House after the squad meeting. At the diner, Miller told Poole that he and his wife were interested in having sex with her. Poole told Miller she was not interested and "just shrugged it off." A radio call for Poole to report interrupted their conversation, and Miller asked her to return to the diner after the call. Poole did not return and agrees that she suffered no repercussions for not returning to meet Miller.

Miller also showed Poole part of a pornographic film in December 2001 and an inappropriate photo in May 2002. However, it is unclear from Poole's testimony whether she considered this harassment or simply inappropriate behavior. Nonetheless, she continued to meet Miller occasionally at the Waffle House from August 2001 to May 2002. Poole deposed that she did so out of fear of reprisal, however, she also agreed that on multiple occasions she declined to meet Miller without any resulting consequence. Similarly, there is no evidence of record that Miller's behavior interfered with Poole's work performance; her annual review on October 24, 2002, rated her work as "Superior" and recommended promotion. She missed no work because of Miller's actions.

Poole attended training on sexual harassment provided by the City on October 25, 2001, and signed a copy of the City's policy prohibiting sexual harassment and providing for the reporting and disciplining of sexual harassment.  Poole did not report Miller's conduct even though some of it occurred during the training period.

Although Poole did not report Miller's actions, she did discuss them with her husband, Plaintiff Harvey Poole.  Harvey Poole encouraged his wife to report Miller, but she refused and told him not to report on her behalf.  She also told her husband that if he reported it she would deny everything which would prevent anything from being done.  Nevertheless, Harvey Poole convinced his wife to wear a tape recorder and record all her conversations with Miller.  She deposed that she did not intend to do anything with the tapes, but agreed only to placate her husband.  Harvey Poole did tell Deputy Chief Smith[3] what his wife had told him and asked Smith to keep their conversation confidential.  Smith encouraged Poole to convince his wife to report the alleged harassment.

The zone which Cathy Poole was assigned to patrol was changed on May 7, 2002.  Poole was unhappy because she was familiar with her previous zone and because the new zone had

---

[3] Deputy Chief Smith and Plaintiff Gina Smith are not related to each other.

-18-

experienced much illegal drug activity.  Cathy Poole asked Miller why she was being moved, and he told her it was not his decision. Poole then revealed that she had been taping their conversations and threatened to turn in the tapes if he did not get her reassignment rescinded.  Miller offered to go to IA with Poole and turn in the tapes.

Miller did not get her reassignment rescinded so two days later Cathy Poole went to Deputy Chief Smith and reported Miller's conduct.  Smith referred her to IA where an investigation was commenced by Lt. Whisenant during which Miller was removed from the unit.  The investigation not only found that Miller's conduct was inappropriate for a supervisor, but also that he had previously paid unwelcome attention to another female officer.  As a result of the IA investigation, Miller was terminated from the NCPD.

Poole believes she was retaliated against in three ways because of her report of Miller's conduct.  On May 13, 2002, she was assigned to a position in the court unit which she had applied for two months earlier.  Additionally, in 2003, she applied for, but failed to receive a promotion.  Forty-one (41) others applied with Poole for the twenty-four (24) open positions.  All were required to take a test and the positions were awarded based upon the test scores.  Eight(8) applicants made higher test scores than Poole, but failed to get the

promotion.  Poole also believes that her co-workers refused to socialize with her following her report.

A psychological assessment of September 21, 2003, sixteen (16) months after Miller was fired, noted that Poole reported "some difficulties consistent with relatively mild or transient depressive symptoms."  Poole presently believes she is depressed because she reported Miller and because of subsequent treatment by co-workers.

A review of the record and relevant case law reveals that the City and Miller are entitled to summary judgment on Cathy Poole's claims of sexual harassment.  Poole failed to establish one of the elements essential to her allegation of sexual harassment by Defendant Robin Miller:  that Miller's behavior created a hostile working environment which altered the conditions of her employment.  Miller's crude behavior notwithstanding, nothing indicates that Poole's work conditions were objectively abusive or that Poole herself subjectively found it to be an abusive work environment.

To establish a hostile working environment, the court must examine a totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.  Harris v. Forklift Systems, Inc., 510 U.S. 17, 23

(1993). Here Miller's conduct consisted almost exclusively of words.[4] Cathy Poole deposed that she did not feel uncomfortable around Miller, simply disgusted. Furthermore, there appears to be no indication that Miller's conduct unreasonably interfered with Cathy Poole's work. In fact, a review of Poole's performance evaluation covering the period of the alleged harassment from October 2001 through October 2002 shows that Poole's overall rating was "Superior".

"Title VII does not provide a remedy for every instance of verbal or physical harassment in the workplace." <u>Lissau v. Southern Food Serv., Inc.</u>, 159 F.3d 177, 183 (4th Cir. 2001). Defendant Miller's actions, while unprofessional, did not rise to the level of sexual harassment within the meaning of Title VII. The City and Miller therefore are entitled to summary judgment.

The City is also entitled to summary judgment on the sexual harassment claims of Poole for an additional reason: it has established the affirmative defense set out in <u>Farragher</u> and <u>Ellerth</u>, supra. The first prong of the Farragher-Ellerth defense, reasonable care by the employer in preventing and/or correcting the harassment, appears to have been met by the City.

> Distribution of an anti-harassment policy provides 'compelling proof that the [employer] exercised reasonable care in preventing and promptly

---

[4] The only non-verbal action consisted of Miller showing Poole a photo of the torso of a nude woman and part of a pornographic DVD.

> correcting sexual harassment.'  The only way to
> rebut this proof is to show that the 'employer
> adopted or administered and anti-harassment policy
> in bad faith or that the policy was otherwise
> defective or dysfunctional.'

Barrett v. Applied Radiant Energy Corp., 240 F.3d 262 at 266 (4th

Cir. 2001) (internal quotations omitted).  The City has

established that it distributed a policy prohibiting sexual

harassment and implemented a training program for all employees.

Cathy Poole attended this training and admits that she received a

copy of the policy while Miller's conduct was ongoing.  Once

Cathy Poole did file a complaint, Miller was immediately removed

from the unit and an investigation proceeded.  At the end of the

investigation, Cathy Poole's allegations were sustained and

Miller was promptly terminated.  Under these facts, the City

established the first prong of the defense.

The second prong of the defense is that the plaintiff

employee must have unreasonably failed to take advantage of the

preventative or corrective opportunities in place.  Burlington

Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).  Cathy Poole simply

refused to initiate a report concerning Miller's conduct.

"[A]ccording to circuit precedent, 'evidence that the plaintiff

failed to utilize the company's complaint procedure will normally

suffice to satisfy [the employer's] burden under the second

element of the defense.'"  Matvia v. Bald Head Island Management,

Inc., 259 F.3d 261 (4th Cir. 2001)(quoting Barrett, supra).

-22-

Cathy Poole did not report the complained of conduct to the City at all, but rather to her husband and made clear to her husband that if he reported the conduct on her behalf, she would deny that Miller's actions took place, effectively dooming any investigation.  Harvey Poole did inform then-Deputy Chief Smith, and both Deputy Chief Smith and Harvey Poole urged Cathy Poole to report Miller.

Cathy Poole's refusal to utilize the reporting procedure can in no way be characterized as reasonable.  When she had previously been the target of harassment, she reported the officer, and the problem was quickly addressed and resolved in her favor.  When she finally did report Miller, Deputy Chief Smith admittedly was supportive of her action.  On these facts, Cathy Poole's refusal to report satisfies the second prong of the defense.  The City is entitled to summary judgment on the sexual harassment claims on this basis as well.

Next, Plaintiff Cathy Poole claims that she was retaliated against by her co-workers' refusal to socialize with her, by receiving a transfer to the court unit, and by being denied a promotion.  The City is entitled to judgment as a matter of law here, as well.

The Fourth Circuit has held that lack of civility by co-workers after a complaint does not amount to adverse employment action.  The <u>Von Guten</u> court quoted the earlier decision in

-23-

<u>Munday v. Waste Management of North Am., Inc.</u>, 126 F.3d 239 (4th

Cir. 1997) and refused to hold that lack of socialization by co-

workers constituted adverse employment action:

> In no case in this circuit have we found an
> adverse employment action to encompass a situation
> where the employer has instructed employees to
> ignore and spy on an employee who engaged in
> protected activity, without evidence that *the*
> *terms, conditions, or benefits of her employment*
> *were adversely affected.*

<u>Von Guten</u> at 865 (emphasis in the original).  Here the alleged

snubbing behavior did not "adversely affect the terms,

conditions, or benefits" of Poole's employment.

Likewise, there is no indication that Cathy Poole's transfer

to the court unit was retaliatory; principally because she asked

for the transfer.  Cathy Poole learned of an opening on the court

unit two months before she reported Miller, and she herself

completed an Administrative Action Form requesting transfer into

the court unit.  After she had made her allegations against

Miller, she was given the choice of several reassignments and she

chose the court unit.  Even if she had not been given a choice,

when a harassed employee requests reassignment and the department

sends her to the only open position, "then a court must view with

skepticism that employee's claims that the assignment constituted

an adverse employment action."  <u>Von Guten v. Maryland</u>, 243 F.3d

858, 869 (4th Cir. 2001).  Furthermore, even had she not

requested the transfer, the transfer or reassignment to a

-24-

position of like hours, grade, and pay, as here, is not an adverse employment action because there is simply no serious detrimental impact on the employee.

Poole's claim that she suffered a retaliatory non-promotion is also flawed. Cathy Poole and forty-one (41) other employees applied for twenty four (24) open positions. Applicants were required to take a written test. Poole's application was rejected because her test scores were too low; she scored thirty-third (33rd) out of forty-one (41). Since there existed only twenty-four (24) openings, eight (8) other applicants scored higher than Poole and failed to get a position.

Poole speculated that her scores might have been altered, but she has nothing to support the allegation. Each applicant was given a private identification number to prevent any such tampering, and the graders saw only this number. The only person who ultimately had access to the test-taker's actual names was Captain Marie Henderson, about whom Cathy Poole deposed, "I believe she would [treat me fairly]."

Additionally Cathy Poole was denied the promotion a year after her complaint about Defendant Miller. Therefore, no inference of causation arises from the temporal relationship of the events. The City is entitled to summary judgment on Cathy Poole's retaliation causes of action.

Further, Plaintiff Cathy Poole like Plaintiff Smith alleged

that the Defendant City has a *de facto* policy of turning a blind eye towards sexual harassment, and that the officers charged with investigating such claims are insufficiently trained.  While in some circumstances, failure to train can support § 1983 liability, neither Smith nor Poole offer evidence to support their contention.

It is undisputed that both the City and the police department have published policies prohibiting sexual harassment. The police department has policies providing for the investigation and discipline of such actions.  The City has mandatory training on sexual harassment provided by outside professional trainers which is provided when an employee is hired and the police department also provides training videos on sexual harassment that are provided regularly to employees.

The undisputed evidence is that Cathy Poole was able to identify the written policies prohibiting sexual harassment and confirmed that she was required to attend a sexual harassment training course during the alleged period of harassment by Defendant Miller.  She further confirmed that she had received and signed a copy of the City's sexual harassment policy which included the requirement that sexual harassment be reported.  She also testified that she knew how to report and had in fact done so in an earlier incident involving harassment by Sgt. Tolson. Defendant Miller has confirmed that he attended the sexual

-26-

harassment training and that the City made clear to him the policies prohibiting sexual harassment.  On these facts, the City is entitled to summary judgment.

Next, it appears Plaintiff Cathy Poole has failed to establish the prima facie elements of a § 1983 violation of her first amendment right not to be retaliated against.  She cannot meet the first prong because her complaint of her own harassment was not speech on a matter of public concern.  A "critical" factor in deciding what speech is entitled to First Amendment protection is "whether the speech is 'made primarily in the [employee's] role as a citizen or primarily in his role as employee.'"  Urofsky v. Gilmore, 216 F.3d 401, 406-407 (4th Cir. 2000).

Here, Poole does not allege anyone other than Miller harassed her nor, does she claim that Miller harassed anyone other than herself.  She spoke in order to correct her own employment conditions, not on a matter of public concern.  Her claim should fail.

Viewing the facts and inferences in the light most favorable to Cathy Poole, she has failed to provide evidence to demonstrate the elements necessary to sustain an outrage cause of action against Robin Miller.  The plaintiff has not shown that Miller intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would

-27-

result from his conduct.  Miller's behavior was not so extreme
and outrageous as to exceed all possible bounds of decency; his
behavior cannot be regarded as atrocious, and utterly intolerable
in a civilized community.  As discussed in evaluating whether
Poole found Miller's treatment severe and pervasive, it appears
Poole simply has not shown that Miller's actions caused her
emotional distress that was severe that no reasonable person
could be expected to endure it.  <u>Ford v. Hutson</u>, 276 S.C. 157,
276 S.E.2d 776, 778 (1981).

**HARVEY POOLE**

Plaintiff Harvey Poole worked for the North Charleston Fire
Department from 1975 until 1979 at which time he joined the NCPD.
He married Plaintiff Cathy Poole in April 1988.

During the aforementioned investigation into his wife's
allegations of sexual harassment against Robin Miller, it was
discovered that Plaintiff Harvey Poole had violated department
rules by discussing the investigation with other employees of the
department.  Harvey Poole acknowledged that he knew the
prohibition against such discussions and that he had been warned
several times to stop discussing the investigation.  Poole was
called to an IA meeting to identify the persons with whom he had
discussed the investigation.  Poole identified co-worker Nancy
McKenna, among others.  Immediately after the meeting, Poole
allegedly called Nancy McKenna.  McKenna indicated to Lt.

-28-

Whisenant that Harvey Poole asked her to obfuscate their discussions of the investigation. As punishment for his continued discussion of the ongoing investigation, Harvey Poole was suspended for five days some time between May 9, 2002, and July 24, 2002. Two other officers discussed the investigation, were told to stop, and they did stop. Those officers were not suspended. A year after the investigation, Harvey Poole was transferred out of forensics and into patrol.

Plaintiff Harvey Poole claims the City retaliated against him for reporting his wife's alleged harassment in three particulars. He claims that (1) he was suspended after giving his statement to IA in the investigation of his wife's complaint about Miller, (2) that he was transferred from his long-time position in the forensics unit, and (3) that he was reassigned multiple times to different shifts or areas.

Harvey Poole's suspension was not retaliatory. It is undisputed that he was temporarily suspended for discussing the IA investigation and for asking another employee to be less than truthful with investigators if asked about their discussion of the investigation. While several other co-workers were also guilty of discussing the open case, conduct contrary to department policy, they all ceased any such discussion after being warned once. Harvey Poole was warned three or four times, did not stop, and attempted to have a co-worker lie for him.

Those are the undisputed reasons for his suspension.  The Fourth
Circuit indicated that the "terms, conditions, or benefits of a
person's employment do not typically, if ever, include general
immunity from the application of basic employment policies or
exemption ... from disciplinary procedures." Matvia v. Bald Head
Island Management, 259 F.3d 261, 272 (4th Cir. 2001); see also,
Von Guten v. Maryland, 243 F.3d 858 (4th Cir.  2001)).  Poole was
simply punished, not retaliated against.

    Harvey Poole also complained that a year after his statement
in the Cathy Poole investigation, he was transferred out of the
forensics unit where he had been for previous five years, and
into the patrol unit.  While some employees in his unit were not
transferred, there was a general shifting of assignments
throughout the department pursuant to a general policy to rotate
officer's assignments.  In any event, such transfer does not
constitute an adverse employment action.  Harvey Poole's
reassignment did not change his pay, grade, rank,
responsibilities, or opportunity for promotion which are the
"typical requirements for showing an 'adverse employment action'
that can support a Title VII claim." Boone v. Goldin, 178 F.3d
253, 255-56 (4th Cir. 1999).

    Additionally, there is no causal connection between the
transfer and the protected activity because a year elapsed
between his statement to IA and his transfer out of the forensics

-30-

unit.  Poole has shown no more than a possibly that the transfer was in any way related to the report.  "[A] jury may ... not be allowed to infer [retaliation] from evidence that does no more than suggest it as a possibility."  <u>Gibson v. Old Town Trolley Tours of Washington, D.C.</u>, 160 F.3d 177, 182 (4th Cir. 1998)(quoting <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230 (4th Cir. 1982)).  The City is entitled to summary judgment.

Poole also alleges that his subsequent changes in assignment after being transferred from forensics to patrol were retaliatory.  However, these reassignments were not changes in job or duties, but simply a change in the area or zone that Poole's unit was to patrol.  Likewise, there was no change in pay, benefits, rank, responsibility, supervisory role, or promotional opportunities.  Since these types of reassignments do not affect the "terms, conditions, or benefits" of employment, they do not constitute "adverse action" within the meaning of Title VII.

Plaintiff Harvey Poole also claims he was retaliated against for speech protected by the first amendment.  However, the alleged retaliation, Poole's temporary suspension, was issued not for the statement he gave to IA regarding Plaintiff Cathy Poole's complaint, but for unprotected speech discussing the investigation with co-workers while it was still pending.

Furthermore, there is no causal link between the suspension and Plaintiff Harvey Poole's statement to IA. After Harvey Poole discussed the investigation several times with co-workers, contrary to orders to stop, he was called in by IA to provide the names of those with whom he had discussed the case. After leaving that meeting, Poole contacted Nancy McKenna, one of the people whose names he had provided, and warned her that IA would call her. He also allegedly asked her to cover for him. Poole could not remember if he had indeed asked McKenna to cover for him, but after IA interviewed McKenna and found out that Poole had warned her of the impending call and had also possibly asked her to obfuscate what Poole had said to her, a five-day suspension was authorized as discipline for the infractions. Harvey Poole's suspension was the result of repeatedly violating the policy against discussing pending IA investigations and ignoring warnings to cease such conduct, not for the actual statement he made to IA in the course of the investigation.

The initial burden in a First Amendment case lies with the plaintiff who must show that his protected speech was the "substantial" or "motivating" factor in the employer's decision to take the allegedly retaliatory action. See, Mt. Helathy City Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 286-87 (1977). Even then, a defendant will not be liable if it shows that the allegedly retaliatory action would have been taken even in the

absence of the protected speech.  The protected speech must have
been the "but for" cause of the retaliatory action.  <u>See</u>, <u>Mt.</u>
<u>Healthy</u>, 429 U.S. at 287; <u>Givhan v. Western Line Consol. Sch.</u>
<u>Dist.</u>, 439 U.S. 410, 416-17 (1979).

> This causation requirement was the result of the
> Court's desire to prevent a government employee
> from insulating himself from legitimate
> [employment action] simply by engaging in
> protected speech.

<u>Wagner v. Wheeler</u>, 13 F.3d 86 (4th Cir. 1993)(citing <u>Mt. Healthy</u>
and <u>Givhan</u>).

There is no evidence that Harvey Poole's statement to IA in
the investigation into his wife's complaint had anything to do
with his transfer from forensics to patrol a year later beyond
Poole's irrelevant subjective belief otherwise.

Plaintiff Harvey Poole's other reassignments within the
patrol unit were only changes in areas and hours of patrol.  Such
is insufficient to create any kind of "chilling effect" on any
protected speech.  Also, as with the initial transfer from
forensics to patrol, due to the lapse of more than a year between
these transfers and Poole's statement in his wife's
investigation, there is no causal connection.  The defendant is
entitled to judgment as a matter of law on this claim of
retaliation.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the Defendant City of North Charleston's and Defendant Robin Miller's motions for summary judgment be granted.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

September **21** , 2005