IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| GINA SMITH, CATHY POOLE, and HARVEY POOLE, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No.: 2:04-0172-PMD |
| v. | ) ) ) | **ORDER** |
| THE CITY OF NORTH CHARLESTON, ROBERT KNIGHT, and ROBIN MILLER, | ) ) ) | |
| Defendants. | ) ) ) | |

In this action, Plaintiffs Gina Smith, Cathy Poole, and Harvey Poole ("Plaintiffs") allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983, and a state law cause of action for intentional infliction of emotional distress. The record includes a Report and Recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B). The Magistrate recommends that Defendants Miller and the City's motions for summary judgment be granted as to all of Plaintiffs' claims. A party may object, in writing, to a report and recommendation within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). Plaintiffs have filed timely objections to the R&R.

**BACKGROUND**

In this action, three present or former officers of the police department of the City of North Charleston (the "City") seek damages arising from the alleged custom and practice of the City of tolerating sexual harassment of female officers by male officers and discouraging, by various means, use of the formal complaint procedures in the police department to address such harassment. Although couched as a single case, this case really consists of two separate sets of claims: one brought by Plaintiff Gina Smith against the City and Defendant Knight alleging harassment by her

co-worker, Knight; and the other brought by Plaintiffs Cathy and Harvey Poole against the City and Defendant Miller claiming that Cathy Poole was harassed by her supervisor, Miller, and that she and her husband (also a City employee), were retaliated against after she reported the harassment. Cathy Poole also asserts an intentional infliction of emotional distress claim against Defendant Miller. Plaintiffs worked in different units under different chains of command and their allegations of harassment are unrelated factually. Defendants Miller and the City both filed summary judgment motions. Defendant Knight has submitted no such motion; accordingly, Plaintiff Smith's claims as against him continue.

The Magistrate did an excellent job summarizing the relevant facts and background of this complicated case. The court therefore incorporates all of the facts as described in the Magistrate's R&R.

## ANALYSIS

### A.     Standard of Review

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R&R to which a specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(c). As to those portions of the Report for which no such specific written objections are made, the court "need not conduct a *de novo* review, but must instead only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). After a review of the entire record, the R&R, and Plaintiffs' objections, the court finds that

the Magistrate Judge thoroughly and accurately summarized the pertinent facts and applicable law, and correctly recommended granting summary judgment in favor of Defendants Miller and the City.

### B.     Legal Standard For Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The court is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### OBJECTIONS

Plaintiffs' objections to the R&R are complete rehashings of arguments made to, and rejected by, the Magistrate. In fact, a significant portion of Plaintiffs' objections are cut and pasted directly from Plaintiffs' brief in response to Defendants' motions for summary judgment. The court notes

that it need not conduct a *de novo* review of objections presented in this form, as these objections never cite specific conclusions of the R&R that are erroneous. *See, e.g., Hernandez Payero v. Puerto Rico,* 338 F.Supp. 2d 279, 281 (D. P. R. 2004) ("[D]efendant's objection simply restates the arguments that the Magistrate-Judge already considered. Under this premise, he cannot expect the Court to treat the filing seriously."); *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F.Supp. 380, 382 (W.D.N.Y.1992) ("It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge."); *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C.1992). Nonetheless, the court makes the following comments after thoroughly reviewing Plaintiffs' objections.

**1. Plaintiffs' objection that the Magistrate erred in failing to consider all facts as alleged by Plaintiffs in making the R&R.**

The objections begin with a recitation of the facts as claimed by Plaintiffs. [Pl. Obj. at 2-6.] Many of these alleged facts are allegations for which no substantive evidence has been presented. [Def. City's Response at 1-3 and 8.] As such, the Magistrate did not consider them in making his R&R. The Plaintiffs object that, given that the court should consider the facts in the light most favorable to the non-moving party, the Magistrate erred in failing to give credence to all of the facts as alleged by Plaintiffs. [Pl. Obj. at 2.]

While the court agrees that, for the purposes of summary judgment, it must consider the facts in the light most favorable to the Plaintiff, there must be some "affirmative evidence" presented by the non-moving party to defeat summary judgment. *Anderson,* 477 U.S. at 257-58. In their objections, Plaintiffs offer no citation to the record for evidence of these alleged facts. After review

of the record, the court can find no substantive evidence to support the claims not considered by the Magistrate. As the R&R correctly notes, "unsupported speculation is not sufficient to defeat a summary judgment motion." [R&R at 4 (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).] After considering the R&R, the objections, and the record, the court is satisfied that the Magistrate correctly considered the facts that were supported by the record.

**2. Plaintiff Smith's objection that Magistrate erred in finding that Defendant Knight's harassment of Smith could not be imputed to the City.**

In the R&R, the Magistrate correctly describes the standard for recovery under Title VII for sexual harassment of a co-worker: "a plaintiff must show: (1) unwelcome conduct; (2) based on Plaintiff's gender; (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis of imputing liability to the employer." [R&R at 6 (citing *Matvia v. Bald Head Island Mgmt.*, Inc., 259 F.3d 261, 266 (4th Cir. 2001)).] The Magistrate concluded that the City's motion for summary judgment should be granted because there was no basis from which to impute liability to the City for Smith's harassment. In reaching this decision, the Magistrate correctly notes that the employer liability standard for co-worker harassment is a negligence standard. *Mikkels v. Durham*, 183 F.3d 323, 329, n. 4 (4th Cir. 1999) ("It is now settled that this failure to act after notice standard is one for imposing Title VII liability on employers for their direct negligence. . . ."). Under this standard, liability attaches to an employer when, after acquiring actual or constructive knowledge of the allegedly harassing conduct, the employer fails to take prompt and adequate remedial action to correct it. *Id.* Citing the City's prompt investigation of Knight's behavior following the complaint, the subsequent finding of "improper treatment" and the ensuing discipline which resulted in the cessation of the unwanted behavior, the Magistrate found that Plaintiff had not presented evidence to support a finding of the

fourth element, i.e., she did not forecast evidence which might form a basis for imputing liability for co-worker harassment to the City.  [R&R at 14-16.]

Relying on the ruling of *Smith v. First Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000), Plaintiff Smith objects that the City's determination that Knight's behavior was "inappropriate" rather than "sexually harassing" proves that its response was not effective.  [Pl. Obj. at 20-21.]  In the *Smith* case, the court found that where a complaint had been filed and an investigation held, an employers failure to "reprimand [the supervisor] for his harassment. . . nor even discuss the topic of sexual harassment with [the supervisor]" and instead to put the supervisor "on probation for ninety days because of his inappropriate management style" was not a sufficient response to such harassment. *Smith,* 202 F.3d at 240.  Plaintiff claims that, as in the *Smith* case, the City's disciplining of Knight without a finding that he had sexually harassed a female officer was insufficient to prevent imputation to the City.  As such, Plaintiff claims that she has presented sufficient evidence to impute liability to the City for Knight's behavior.

The court finds that the facts of *Smith* are distinguishable such that application of *Smith'*s rationale to the case *sub judice* would be in error.  An important distinction between *Smith* and the case *sub judice* is that the alleged harasser in *Smith* was a supervisor of the victim; in this case, Knight is a co-worker with less seniority than Smith.  After reciting the facts of the case and confirming that the allegations could constitute sexual harassment, the court in *Smith* turned to whether the employer could be imputed with liability for that harassment.  In addressing that issue, the court focused its analysis on the application of the affirmative defense created in *Faragher*[1] and *Burlington*[2] by the Supreme Court when it ruled that employers have vicarious liability for the

---

[1] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

[2] *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998).

harassment of employees *by their supervisors*. *See Smith,* 202 F.3d at 242. As the Magistrate made clear in his R&R, the standard for imputing liability is more stringent for co-worker harassment than for supervisor harassment. [R&R at 6-7.] Where an employee proves that she has been sexually harassed by a supervisor, liability attaches to the employer *unless* the employer proves by a preponderance of the evidence (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. *Faragher*, 524 U.S. at 807. In contrast, where the harasser is a co-worker, the victim-employee bears the burden of proving that the employee's harassment is imputable to the employer. *Mikkels,* 183 F.3d at 329. As mentioned above, this may be done by showing that the employer was negligent in failing to correct the harassing situation once the employer had knowledge of it. *Id.* As such, because the standards for imputing liability to an employer differs depending on whether the harasser is a supervisor or a co-worker, application of the *Smith* supervisor-standard to this case would be in error.

The Magistrate relied upon the co-worker harassment standard described in *Swentek v. USAIR, Inc.,* 830 F.2d 552 (4th Cir. 1987) in making his recommendation. [R&R at 14.] In *Swentek*, the Fourth Circuit wrote:

> In taking remedial action, [the employer] was obliged to investigate Swentek's charges [of sexual harassment against a co-worker] and to present a reasonable basis for its subsequent actions. It was not, however, required to credit all of Swentek's allegations in order to escape liability. In view of the allegations in this case, [the employer's] written warning [to the co-worker to refrain from using foul language] was adequate.

*Swentek*, 830 F.2d at 558. The Magistrate relied on this language in finding that the City's response - disciplining Knight, but not finding sexual harassment - was a reasonable, appropriate and effective remedial action. Plaintiff argues that the Magistrate erred in relying on *Swentek* because it is

factually distinguishable from this case. In *Swentek*, the harasser denied some of the alleged harassment and, because the employer chose to credit his denial, no finding of sexual harassment was made. *Id.* In this case, during the City's investigation of Smith's complaint, Knight *admits* to telling Smith "to suck my c**k," calling her a "toothpick bitch," and telling her "you can't leave until you give me a hug," and still is only cited for "inappropriate behavior." [Pl. Obj. at 20.] Plaintiff argues that, given the admitted behavior of Knight, the City was required to formally find Knight's behavior was sexually harassing and failure to do so was necessarily inadequate.

While the court agrees that this citation seems mild given the admitted behavior, the courts do not require any specific remedial responses to harassment for an employer to avoid liability for co-worker harassment. In these situations, the courts have held that significant weight should be given "to the fact that a particular response was demonstrably adequate to cause cessation of the conduct in question." [R&R at 7 (quoting *Mikkels*, 183 F.3d at 330).] In this case, it is clear that the disciplining of Knight was effective. Smith made no further complaints regarding Knight's behavior, and Knight never again made inappropriate, sexually harassing statements to Smith.[3] As such, the Magistrate did not err in finding that the City's prompt and effective remedial response to Plaintiff's complaint was not negligent. As the Magistrate succinctly noted,

> Plaintiff Smith knew that harassment was prohibited and when Knight's conduct merited it, Smith reported it to her supervisor, Sgt. Johnson. Johnson, in turn, put a stop to Knight's conduct and then forwarded the report up the chain of command to IA for an investigation which resulted in Knight's discipline. Smith disagreed with the severity of that discipline and she claimed the investigation was somehow inadequate. Her subjective opinions fall far short of demonstrating with admissible evidence that constitutional rights were violated.

---

[3] Plaintiff claims that after being disciplined, Knight "followed" Smith to one of her calls and "stood within five feet of her." [Pl. Obj. at 3.]; however, upon reviewing the record, the court can find no evidence that Knight did anything but follow the usual procedure of the department in responding to calls. It is undisputed that Knight never again spoke to or behaved inappropriately towards Smith.

R& R at 15.

Because the court agrees that the City was not negligent, the court holds that the Magistrate did not err in finding that Knight's inappropriate behavior could not be imputed to the City.

**3. Plaintiff Cathy Poole's objection that the Magistrate erred in failing to consider Plaintiff Poole's *quid pro quo* sexual harassment allegation.**

As the Magistrate correctly noted, in order to establish a *prima facie* case of sexual harassment, a plaintiff must show that the harassment is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" [R&R at 5-6 (citing *Meritor Savings Bank, FSV v. Vinson,* 477 U.S. 57, 67 (1986)).] The Magistrate, noting that "Title VII does not provide a remedy for every instance of harassment in the workplace," found that Plaintiff had failed to present sufficient evidence that Cathy Poole suffered from a hostile work environment.[4] [R&R at 21.] As such, the Magistrate recommended that both Miller and the City are entitled to summary judgment.

Plaintiffs object that the Magistrate did not consider that Cathy Poole suffered a "tangible employment action" once she refused her supervisor's sexual advances, thus making both Miller and the City strictly liable for *quid pro quo* sexual harassment. [Pl. Obj. at 22.] In order to establish a *prima facie* case of *quid pro quo* sexual harassment, a plaintiff must show: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; and (4) the employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. *See Reinhold v. Com. of Virginia,* 135 F.3d 920, 931 (4th Cir. 1998); *see Spencer v.*

---

[4] In their objections, Plaintiffs extensively reiterate the admitted instances of sexual harassment, but do not object to the Magistrate's finding that the evidence does not support a finding of hostile work environment. [Pl. Obj. at 9-10.]

*Gen. Elec. Co.,* 894 F.2d 651, 658 (4th Cir.1990).  When a supervisor's sexual harassment of an employee culminates in a "tangible employment action," the employer is liable for the harassment, regardless of whether the employer knew or should have known of the harassment and regardless of whether the employer took remedial steps to end the harassment after learning of it.  *See Faragher,* 524 U.S. at 805*; Ellerth,* 524 U.S. At 765.  The Court defined "tangible employment action" in *Ellerth* as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761.  Although a "tangible employment action" may not always involve economic harm, the Court stated that "[a] tangible employment action in most cases inflicts direct economic harm." *Id.*

Plaintiffs claim that, prior to her reporting the harassment, Miller transferred Poole to patrolling "another zone that was infested with drug dealers" as retaliation for refusing his sexual advances. [Pl. Obj. at 22.] Plaintiffs assert that this transfer constituted a tangible job detriment that the Magistrate erred in failing to consider.  The court finds that the Magistrate did not so err. Plaintiffs did not present evidence that Miller's transfer of Poole was in any way related to her response to his unwanted advances.  There is significant evidence in the record that Cathy Poole's transfer was not even Miller's decision.  Lieutenant Melvin Cumbee testified that he ordered the transfer in response to changing needs of the Department.[5]  [Def. Miller Response at 3.]  Further, the Fourth Circuit has held that the assignment of more or different work absent an infliction of direct economic harm, a significant change in employment status, or significant change in

---

[5] Specifically, Lt. Cumbee testified, "it's my prerogative as Watch Commander to move people around to different zones, and it was common practice.  I still do it to this day.  On that particular incident, she was moved because one of the officers, I believe, had a rookie with them that needed to work that zone, that more northerly zone." [Depo. of Melvin Cumbee, Doc. No. 92, at 65.]

responsibilities does not constitute a "tangible employment action." *See Reinhold v. Commonwealth of VA*, 135 F.3d 920 (4th Cir. 1998). The transfer to a different patrolling zone in no way affected Poole's general responsibilities or compensation. As such, because Plaintiff failed to establish a necessary link between the transfer and the harassment and because the transfer does not qualify as an adverse employment action, the Magistrate did not err in failing to consider Plaintiffs' *quid pro quo* sexual harassment claim. The court therefore concludes that the Magistrate correctly found that the City and Miller are entitled to summary judgment.[6]

**4. Plaintiffs' objections regarding the Pooles' retaliation and intentional infliction of emotional distress claims**.

With regard to these claims, the court can find no specific objection that is anything more than a recitation of the Plaintiffs' response to the Defendants' summary judgment motions. As such, the court finds that Plaintiffs are not entitled to a *de novo* review of these claims. Upon review of the record and the R&R, the court is satisfied that there is no clear error on the face of the record and accepts the Magistrate's recommendation to grant Defendants' summary judgment motion.

---

[6] Because the court finds that Plaintiffs failed to establish a *prima facie* sexual harassment claim, the court does not address Plaintiffs' objection that the Magistrate erred in finding that the City is entitled to a *Faragher/Ellerth* defense.

## CONCLUSION

As the Magistrate concluded, Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact with respect to any of their discrimination or retaliation claims. The court specifically incorporates the thorough and well-reasoned R&R into this Order without further recitation.

Accordingly, it is hereby **ORDERED** that Defendants Robin Miller and the City of North Charleston's Motions for Summary Judgment are **GRANTED.**

It is further **ORDERED** that Defendants Robin Miller, Robert Knight and the City of North Charleston's Motions for Separate Trial are hereby deemed to be **MOOT.**

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**November 18, 2005**